UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| The Estate of Cassandra McDonald, deceased, by and through Evelyn McDonald and Julie Sailor, on behalf of D.G.L., C.M.S., and E.R.S., minor children for themselves and on behalf of the heirs at law of Cassandra McDonald, deceased.<br><br>Plaintiffs,<br><br>vs.<br><br>Lake Region Correctional Center; Lake Region Law Enforcement Center; The City of Devils Lake; Ramsey County; Nelson County; Benson County; Eddy County; Mary and John Does 1-10, individually and in their official capacities as Lake Region Correctional Center Officers and employees; Brock Charette, individually and in his official capacity as Lake Region Correctional Center Officer and employee; Sherriff Steve Nelson, individually and in his official capacity as administrator of Lake Region Correctional Center; Keaton Martin, individually and in his official capacity as an employee of Lake Region Correctional Center; Dr. Derek Wayman, individually and in his capacity as an employee of Lake Region Correctional Center.<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT** |

For their claims for relief against the Defendants, Plaintiffs Evelyn McDonald and Julie Sailor, on behalf of D.G.L., C.M.S. and E.R.S., the minor children of decedent Cassandra McDonald, by and through counsel, state and allege as follows: Steve Nelson, Brock Charette, Keaton Martin, Dr. Derek Wayman, and Mary and John Does 1-10

1. On November 10, 2023, Cassandra McDonald died as a result of the fault and/or negligence of Defendants by their failure to obtain adequate medical care for her, and to adequately supervise and care for her in a time of crisis, while she was in Defendants' care.

2. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for Defendants' violation of Cassandra McDonald's federal constitutional rights guaranteed by the Eighth and Fourteenth Amendments of the Constitution of the United States, while acting under the color of state law.

I. **PARTIES AND JURISDICTION**

3. At all times material hereto, Cassandra McDonald, resided in Lake Region Law Enforcement Center in Devils Lake, North Dakota.

4. Lake Region Correctional Center ("LRCC") is a political subdivision of the City of Devils Lake, Ramsey County, Nelson County, Benson County, and Eddy County, pursuant to the Lake Region Law Enforcement Center's ("LRLEC") Joint Powers agreement, which operates the LRCC and employs and is charged with the supervision and control of those who serve as correctional officers ("COs") and law enforcement officers therein.

5. Lake Region Law Enforcement Center is a political subdivision of the State of North Dakota and employs Correctional Officers for LRCC. The City of Devils Lake, Ramsey County, Nelson County, Benson County and Eddy County employ and are charged with the supervision and control of those who serve as correctional officers and law enforcement officers therein.

6. Mary and John Does 1-10 are duly appointed and acting corrections officers at the LRCC who, as such, were agents authorized to enforce the law and were acting under the

2

color of the law at all material times. All causes of action brought against these Defendants herein are brought in their personal and in their official capacity as correctional officers.

7. Sherriff Steve Nelson of Ramsey County is duly appointed LRCC administrator who, as such, was an agent authorized to enforce the law and was acting under the color of the law at all material times. The cause of action brought against this Defendant is brought in his personal and official capacity as LRCC administrator.

8. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case involves a question of federal law and pursuant to 28 U.S.C. § 1343(a)(3)-(4), which gives this Court original jurisdiction over civil actions to redress the deprivation, under color of any State law, statute, ordinance, or regulation, of any right, privilege or immunity secured by federal constitutional rights or any right secured by federal statute, such as under 42 U.S.C. §§ 1983 and 1988.

9. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the Plaintiffs' remaining negligence and wrongful death claims against Defendants because all claims arise due to the same actions and failures of Defendants.

## II.   FACTUAL BACKGROUND

10. Cassandra McDonald died at approximately 2:16 a.m. on November 10, 2023, at Sanford Fargo Medical Center, Fargo, North Dakota, after being found nonresponsive in her cell at Lake Region Law Enforcement Center in Devils Lake, North Dakota at approximately 7:50 p.m. on November 8, 2023.

11. Cassandra McDonald died of ligature strangulation subsequent to hanging.

12. Cassandra McDonald was in LRCC's custody from November 4, 2023, until her death on November 10, 2023.

13. While in LRCC's custody, Cassandra McDonald was placed under the authority of LRLEC from November 4, 2023, until her death on November 10, 2023.

14. The LRCC is governed by the LRLEC Governing Board which is comprised of seven commissioners: two from the City of Devils Lake, two from Ramsey County, and one each from Nelson, Benson, and Eddy Counties that act under a Joint Powers Agreement.

15. While incarcerated at LRCC, Cassandra McDonald relied upon the Defendants to provide adequate medical care.

16. During the time Cassandra McDonald was in Defendants' custody from November 4, 2023, until November 10, 2023, the Defendants acted in concert.

17. During the time Cassandra McDonald was in Defendants' custody from November 4, 2023, until November 10, 2023, the LRLEC Governing Board adopted and/or ratified the actions of LRCC personnel, including all named Defendants who were duly appointed agents acting under color of law for LRCC.

18. The LRLEC Defendants acted on behalf of and/or for the benefit of LRCC in taking Cassandra McDonald into their care at the LRCC from November 4, 2023, until her death on November 10, 2023.

19. At all times relevant hereto, all Defendants were aware that Cassandra McDonald was in poor mental health and struggled with addiction.

20. Despite being in custody at LRCC, Cassandra McDonald continued to have access to Methamphetamine.

21. From November 4, 2023, until her death on November 10, 2023, Cassandra McDonald exhibited obvious signs and symptoms of severe mental illness and continued addiction taking a toll on her physical and mental health while in LRCC.

4

22. Before her death on November 10, 2023, LRCC officials were required to comply with North Dakota Department of Corrections and Rehabilitation's ("DOCR") standards for safety, including monitoring mental health, signs of suicide, and addiction.

23. At or about the time of LRCC's last inspection by the North Dakota Department of Corrections and Rehabilitation ("DOCR") before Cassandra McDonald took her own life, LRCC was not compliant with DOCR Standard 031 requirements by not providing mental health screening to inmates when they were no longer under the influence, after removal from observation, or after any life event which results in a noticeable decline in affect or emotional stability.

24. At or about the time of LRCC's last inspection by DOCR before Cassandra McDonald's suicide attempt, LRCC was not compliant with DOCR Standard 032 requirements that correctional facilities shall have a written policy and procedure for conducting rounds and for placing inmates into and removing inmates from close observation. This policy also required trained staff to conduct rounds to personally observe each inmate during each hourly period on an irregular basis. This trained staff was supposed to provide close observation of inmates who exhibit suicidal tendencies, self-destructive behavior, or emotional distress; are intoxicated; or have specialized medical problems at more frequent intervals as the inmate's condition requires. LRCC specifically failed to comply by not making these rounds consistently.

25. The Defendants working as duly appointed agents on behalf of the LRCC knew or should have known that Cassandra McDonald required mental health attention from November 4, 2023, until the date of her death on November 10, 2023.

26. From November 4, 2023, until the date of her death on November 10, 2023, Defendants failed to properly monitor Cassandra McDonald and get her the appropriate mental health care.

27. From November 4, 2023, through the date of her death on November 10, 2023, Defendants failed to take complaints about Cassandra McDonald's mental health seriously.

28. From November 4, 2023, through the date of her death on November 10, 2023, Defendants failed to take Cassandra McDonald's addiction struggles seriously.

29. On November 7, 2023, Cassandra McDonald was seen at CHI Health ER in Devils Lake, North Dakota, for an arm injury she sustained while in jail.

30. LRCC has observation and safety cells for offenders who are under the influence of alcohol or drugs, display violent behavior, self-harm, or show an inability to exercise self-control.

31. Cassandra McDonald was not relocated to one of these observation cells after the arm incident on the day before she hung herself.

32. LRCC had a policy that required inmates with signs or symptoms of mental illness or emotional disturbance to be appropriately observed. The LRCC staff was required to document the time, condition, and actions of the inmate or individual in the designated log. Nothing about Cassandra McDonald's mental health was appropriately logged after the arm incident the day before she hung herself.

33. Defendants dismissed any mental health concerns and sent her back to her private room in LRCC without observation despite her jumping off her top bunk, thereby failing to give Cassandra McDonald the appropriate mental health and addiction care she was entitled to.

34. From November 4, 2023 until November 10, 2023, the LRLEC Governing Board personnel failed to provide Cassandra McDonald with adequate, meaningful medical care.

35. On November 8, 2023, Cassandra McDonald died.

36. Toxicology reports from after Cassandra McDonald's death indicate she had methamphetamine in her system on November 8, 2023, which contributed to her death. She was in custody of LRCC at that time.

37. At approximately 7:50 pm on November 8, 2023, LRCC personnel found Cassandra McDonald and called an ambulance. She was transported to CHI Health in Devils Lake, North Dakota.

38. At 9:31 p.m. on November 8, 2023, Cassandra McDonald was admitted to the CHI Health emergency room.

39. Upon admission on November 8, 2023, Cassandra McDonald was diagnosed with attempted suicide by strangulation.

40. Later, on November 8, 2023, Cassandra McDonald was flown to Sanford Medical Center Fargo for a higher level of care.

41. While at Sanford Medical Center, a CT scan revealed that Cassandra McDonald had severe cerebral anoxia due to asphyxiation.

42. While at Sanford Medical Center, Cassandra McDonald's family was advised that her prognosis to survive was very low, so they chose to place her on comfort care.

43. Cassandra McDonald died on November 10, 2023, at approximately 2:16 a.m. from the self-inflicted injuries from November 8, 2023.

III. **CAUSE OF ACTION UNDER 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS FOR DEPRIVATION OF CIVIL RIGHTS WITHOUT DUE PROCESS**

44. Plaintiffs reincorporate all preceding allegations as though set forth in full herein.

45. While in Defendants' care and custody, Cassandra McDonald had a constitutional right under the substantive due process clause of the Eighth and Fourteenth Amendments to the United States Constitution to have her basic human needs met, including receiving adequate medical care.

46. Cassandra McDonald had a right under the Eighth Amendment of the United States Constitution and under the substantive due process clause of the Fourteenth Amendment to the United States Constitution not to be deprived of her life without due process of law.

47. While incarcerated Cassandra McDonald was unable to care for herself and Defendants had an affirmative duty to protect her from life-threatening health conditions.

48. Defendants' deliberate indifference to Cassandra McDonald's serious medical condition constitutes a violation of her Eighth and Fourteenth Amendment rights.

49. Defendants willfully denied Cassandra McDonald adequate mental health care and were deliberately indifferent to her subsequent medical needs.

50. Defendants knew of and disregarded a substantial risk of serious harm to Cassandra McDonald's health and safety.

51. As a direct and proximate result of Defendants' acts and/or omissions, Defendants deprived Cassandra McDonald of her federal constitutional right to receive adequate medical care and mental health care while acting under the color of state law, in

violation of the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

52. As a direct and proximate result of Defendants' acts and/or omissions, Defendants deprived Cassandra McDonald of her federal constitutional right to life while acting under the color of state law, in violation of the Eighth and Fourteenth Amendments and 42 U.S.C. § 1983.

53. By reason of the death of Cassandra McDonald, and as a result of Defendants' acts and/or omissions, Plaintiffs have suffered pecuniary and financial losses, including funeral, medical, burial expenses, and other economic losses; have sustained the loss of support, society, services, comfort, guidance, advice, counsel, protection, and other non-economic damages; and have sustained and will continue to sustain and suffer mental anguish and grief, including those damages available to Plaintiff as set forth under 42 U.S.C. § 1983.

### IV. CAUSE OF ACTION UNDER 42 U.S.C. § 1983 AGAINST RAMSEY, NELSON, BENSON, AND EDDY COUNTIES AND THE CITY OF DEVILS LAKE FOR DEPRIVATION OF CIVIL RIGHTS WITHOUT DUE PROCESS

54. Plaintiffs reincorporate all preceding allegations as though set forth in full herein.

55. The City of Devils Lake as well as Ramsey, Nelson, Benson, and Eddy Counties delegated authority over LCC to LRLEC. LRLEC delegated authority for decisions regarding Cassandra McDonald's need for medical care to the corrections officers and nurses at the LRCC.

56. While incarcerated, Cassandra McDonald had a constitutional right under the Eighth and Fourteenth Amendments to the United States Constitution to have her basic human needs met, including the right to receive adequate medical care and the right to life.

57. Defendants' deliberate indifference to Cassandra McDonald's serious mental health needs violated her Eighth and Fourteenth Amendment rights.

58. The corrections officers, nurses, and other employees were thus the *de facto* policymakers when it came to decisions regarding Cassandra McDonald's medical care.

59. LRLEC's policies and procedures were inadequate to address Cassandra McDonald's demonstrable, serious medical needs. They also failed to comply with DOCR Standards 031 and 032.

60. Defendants' deprivations of Cassandra McDonald's serious medical needs were undertaken pursuant to LRLEC's custom or policy.

61. LRCC had an ongoing pattern of failing to properly provide adequate medical care and attention to inmates who were suffering from serious mental health conditions.

62. LRCC knew of and disregarded a substantial risk of serious harm to Cassandra McDonald's health and safety.

63. LRLEC's acts and/or omissions in response to Cassandra McDonald's serious medical needs were willful, conscious, and/or deliberate.

64. As a direct and proximate result of LRLEC's acts and/or omissions, LRLEC deprived Cassandra McDonald of her federal constitutional right to receive adequate medical care while acting under the color of state law, in violation of the Eighth and Fourteenth Amendments and 42 U.S.C. § 1983.

65. As a direct and proximate result of LRLEC's acts and/or omissions, Defendants deprived Cassandra McDonald of her federal constitutional right to life while acting under the color of state law, in violation of the Eighth and Fourteenth Amendments and 42 U.S.C. § 1983.

66. By reason of the death of Cassandra McDonald, and as a result of LRLEC's acts and/or omissions, Plaintiffs have suffered pecuniary and financial losses, including funeral, medical, burial expenses, and other economic losses; have sustained the loss of support, society, services, comfort, guidance, advice, counsel, protection, and other non-economic damages; and have sustained and will continue to sustain and suffer mental anguish and grief, including those damages available to Plaintiff as set forth under 42 U.S.C. § 1983.

V. **CAUSE OF ACTION FOR NEGLIGENCE AGAINST LAKE REGION CORRECTIONAL CENTER**

67. Plaintiffs reincorporate all preceding allegations as though set forth in full herein.

68. At all times material hereto, LRCC owed duties of care to Cassandra McDonald.

69. LRCC breached their duties of care and caused Cassandra McDonald's mental and physical health to deteriorate while she was in LRCC's custody.

70. LRCC is required by North Dakota law to ensure that inmates, such as Cassandra McDonald, have and receive adequate and timely medical care.

71. LRCC breached their duty of care by failing to ensure that Cassandra McDonald had access to adequate and timely mental health care.

72. While in custody, LRCC was required by North Dakota law to provide Cassandra McDonald necessary mental health treatment and observation when failure to do so would cause her to suffer unnecessary pain and/or hardship.

73. LRCC breached their duty of care by failing to provide the necessary treatment and observation of Cassandra McDonald's mental health condition.

74. LRCC knew or should have known that Cassandra McDonald required mental health attention and observation while in LRCC's custody.

75. LRCC knew or should have known that Cassandra McDonald had access to methamphetamine, was using it again, and was in need of observation pursuant to DOCR Standard 031.

76. LRCC breached their duty of care by ignoring the open and obvious signs that Cassandra McDonald was in need of immediate mental health attention and observation, including but not limited to the arm injury of November 7, 2023.

77. LRCC breached their duty of care by neglecting Cassandra McDonald's mental health needs.

78. LRLEC breached their duty of care by ignoring the open and obvious signs that Cassandra McDonald was using methamphetamine.

79. As a direct and proximate cause of the carelessness and negligence of LRCC, Cassandra McDonald's mental health condition was allowed to progress to the point of her death.

80. As a direct and proximate cause of the carelessness and negligence of LRCC, Plaintiffs have sustained and suffered resulting damages.

81. As a direct and proximate cause of the carelessness and negligence of LRCC, prior to her death, Cassandra McDonald experienced extreme emotional pain, suffering, mental anguish, and distress and sustained those economic and non-economic damages set forth in N.D.C.C. § 32-03.2-04.

82. By reason of the death of Cassandra McDonald, Plaintiffs have suffered pecuniary and financial losses, including funeral, medical, burial expenses, and other economic

losses; have sustained the loss of support, society, services, comfort, guidance, advice, counsel, protection, and other non-economic damages; and have sustained and will continue to sustain and suffer mental anguish and grief.

## VI. CAUSE OF ACTION FOR NEGLIGENCE AGAINST LAKE REGION LAW ENFORCEMENT CENTER

83. Plaintiffs reincorporate all preceding allegations as though set forth in full herein.

84. At all times material hereto, LRLEC owed duties of care to Cassandra McDonald.

85. LRLEC breached their duties of care and caused Cassandra McDonald's health to deteriorate while she was in LRLEC's care.

86. LRLEC is required by North Dakota law to ensure that inmates, such as Cassandra McDonald, have and receive adequate and timely medical care.

87. LRLEC breached their duty of care by failing to ensure that Cassandra McDonald had access to adequate and timely medical care.

88. While in custody, LRLEC was required by North Dakota law to provide Cassandra McDonald necessary medical treatment when failure to do so would cause her to suffer unnecessary pain and/or hardship.

89. LRLEC breached their duty of care by failing to provide the necessary treatment for Cassandra McDonald's medical condition.

90. LRLEC knew or should have known that Cassandra McDonald required mental health attention and observation while in LRLEC's care.

91. LRCC knew or should have known that Cassandra McDonald had access to methamphetamine, was using it again, and was in need of observation pursuant to DOCR Standard 031.

92. LRLEC breached their duty of care by ignoring the open and obvious signs that Cassandra McDonald was in need of immediate mental health attention and observation pursuant to DOCR Standard 031.

93. LRLEC breached their duty of care by ignoring the open and obvious signs that Cassandra McDonald was using methamphetamine.

94. LRLEC breached their duty of care by neglecting Cassandra McDonald's medical and mental health needs.

95. As a direct and proximate cause of the carelssness and negligence of LRLEC, Cassandra McDonald's medical condition and addiction struggles were allowed to progress to the point of her death.

96. As a direct and proximate cause of the carelessness and negligence of LRLEC, Plaintiffs have sustained and suffered resulting damages.

97. As a direct and proximate cause of the carelessness and negligence of LRLEC, prior to her death Cassandra McDonald experienced extreme emotional pain, suffering, mental anguish, and distress and sustained those economic and non-economic damages set forth in N.D.C.C. § 32-03.2-04.

98. By reason of the death of Cassandra McDonald, Plaintiffs have suffered pecuniary and financial losses, including funeral, medical, burial expenses, and other economic losses; have sustained the loss of support, society, services, comfort, guidance, advice, counsel,

protection, and other non-economic damages; and have sustained and will continue to sustain and suffer mental anguish and grief.

VII. **CAUSE OF ACTION FOR NEGLIGENCE AGAINST STEVE NELSON, BROCK CHARETTE, KEATON MARTIN, DR. DEREK WAYMAN AND MARY AND JOHN DOES 1-10.**

99. Plaintiffs reincorporate all preceding allegations as though set forth in full herein.

100. At all times material hereto, Steve Nelson, Brock Charette, Keaton Martin, Dr. Derek Wayman, and Mary and John Does 1-10 owed duties of care to Cassandra McDonald.

101. Steve Nelson, Brock Charette, Keaton Martin, Dr. Derek Wayman, and Mary and John Does 1-10 breached their duties of care and caused Cassandra McDonald's health to deteriorate while she was in LRLEC's care.

102. Steve Nelson, Brock Charette, Keaton Martin, and Mary and John Does are required by North Dakota law to ensure that inmates, such as Cassandra McDonald, have and receive adequate and timely medical care.

103. Steve Nelson, Brock Charette, Keaton Martin, and Mary and John Does 1-10 breached their duty of care by failing to ensure that Cassandra McDonald had access to adequate and timely medical care.

104. While in custody, Steve Nelson, Brock Charette, Keaton Martin, and Mary and John Does were required by North Dakota law to provide Cassandra McDonald necessary medical treatment when failure to do so would cause her to suffer unnecessary pain and/or hardship.

105. Steve Nelson, Brock Charette, Keaton Martin, and Mary and John Does 1-10 breached their duty of care by failing to provide the necessary treatment for Cassandra McDonald's mental health condition and addiction struggles.

106. Steve Nelson, Brock Charette, Keaton Martin, and Mary and John Does 1-10 knew or should have known that Cassandra McDonald required mental health attention and observation while in their care.

107. Steve Nelson, Brock Charette, Keaton Martin, and Mary and John Does 1-10 knew or should have known that Cassandra McDonald had access to methamphetamine, was using it again, and was in need of observation pursuant to DOCR Standard 031.

108. Steve Nelson, Brock Charette, Keaton Martin, and Mary and John Does 1-10 breached their duty of care by ignoring the open and obvious signs that Cassandra McDonald was in need of immediate mental health attention and observation pursuant to DOCR Standard 031.

109. Steve Nelson, Brock Charette, Keaton Martin, Dr. Derek Wayman, and Mary and John Does 1-10 breached their duty of care by ignoring the open and obvious signs that Cassandra McDonald was using methamphetamine.

110. In particular, Dr. Derek Wayman breached his duty of care by ignoring the fact that Cassandra McDonald admitted to smoking a "couple hit[s]" of methamphetamine on November 5, 2023, which was one day after she began her incarceration period.

111. Steve Nelson, Brock Charette, Keaton Martin, Dr. Derek Wayman, and Mary and John Does 1-10 breached their duty of care by neglecting Cassandra McDonald's medical and mental health needs.

112. As a direct and proximate cause of the carelssness and negligence of Steve Nelson, Brock Charette, Keaton Martin, Dr. Derek Wayman, and Mary and John Does 1-10, Cassandra McDonald's medical condition and addiction struggles were allowed to progress to the point of her death. In particular, defendants jointly ignored that she broke her arm jumping off her bed.

113. As a direct and proximate cause of the carelessness and negligence of Steve Nelson, Brock Charette, Keaton Martin, Dr. Derek Wayman, and Mary and John Does 1-10, Plaintiffs have sustained and suffered resulting damages.

114. As a direct and proximate cause of the carelessness and negligence of Steve Nelson, Brock Charette, Keaton Martin, Dr. Derek Wayman, and Mary and John Does 1-10, prior to her death Cassandra McDonald experienced extreme emotional pain, suffering, mental anguish, and distress and sustained those economic and non-economic damages set forth in N.D.C.C. § 32-03.2-04.

115. By reason of the death of Cassandra McDonald, Plaintiffs have suffered pecuniary and financial losses, including funeral, medical, burial expenses, and other economic losses; have sustained the loss of support, society, services, comfort, guidance, advice, counsel, protection, and other non-economic damages; and have sustained and will continue to sustain and suffer mental anguish and grief.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages in a reasonable sum but not less than Seventy-Five Thousand and no/100 Dollars ($75,000.00), for Plaintiff's attorney's fees as allowed by law, plus interest, costs, disbursements, and further relief as to the Court may seem just and equitable.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES HEREIN.**

Dated this 16th day of October, 2025.

        **VOGEL LAW FIRM**

BY: */s/ Jordan B. Weir*
    H. Patrick Weir, Jr. (#04822)
    Jordan B. Weir (#07852)
    218 NP Avenue
    PO Box 1389
    Fargo, ND 58107-1389
    701.237.6983

    Email: hpweir@vogellaw.com
            jweir@vogellaw.com
    ATTORNEYS FOR Julie Sailor, guardian of C.M.S. and E.R.S.

        *AND*

        **REICHERT LAW**

BY: */s/ Amanda Corey*
    Amanda Corey (#08415)
    118 Belmont Rd.
    Grand Forks, ND 58201
    701.787.8802
    Email: amanda@reichertlaw.com
            supportstaff@reichertlaw.com
    ATTORNEYS FOR Evelyn McDonald, guardian of D.G.L.